**The below described is SIGNED.**



**Dated: June 6, 2013**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

Duane H. Gillman #1194
dgillman@djplaw.com
Kenneth L. Cannon II #3705
kcannon@djplaw.com
Patrick E. Johnson #10771
pjohnson@djplaw.com
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
P. O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000
Facsimile:  (801) 415-3500

Attorneys for Duane H. Gillman, Chapter 11 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In Re:<br><br>WEST DANIELS LAND ASSOCIATION, INC.,<br><br>        Debtor. | Bankruptcy Case Number<br><br>09-32502 RKM<br>Chapter 11<br>(Small Business Case) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION
### OF TRUSTEE'S PLAN OF REORGANIZATION DATED MAY 30, 2013

        The Trustee's Plan of Reorganization dated April 23, 2013 (the "April 23 Plan")(docket

no. 663),[1] came on for confirmation hearing as scheduled on Thursday, May 30, 2013.

Appearances of counsel were made as noted on the record of the hearing.

---

        [1] All capitalized terms not defined in these Findings of Fact and Conclusions of Law shall have
the same meaning ascribed to them in the April 23 Plan.  The modification to the April 23 Plan discussed
below does not modify any defined terms in the April 23 Plan.

At the hearing, counsel for the Trustee announced that the Trustee had agreed with the United States Internal Revenue Service to modify the April 23 Plan to enlarge the period of time for taxing authorities to file Administrative Expense Claims.  The modification to the April 23 Plan is in Section 13.2.  This Section, as modified, now reads as follows (the modification to this Section is marked):

> 13.2   <u>Administrative Expense Claims Bar Date</u>.  Unpaid Administrative Expense Claims arising prior to the Effective Date (other than ordinary course Administrative Expense Claims and fees of the United States Trustee) shall be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date<u>, except that taxing authorities this period shall have two hundred ten (210) days after the Effective Date to file Administrative Expense Claims,</u> or be forever barred from receiving any distribution under the Plan.  Professionals shall file final fee applications for Administrative Expense Claims arising prior to the Effective Date by this date to meet this requirement.

The April 23 Plan was not otherwise modified.  The April 23 Plan as modified is entitled the Trustee's Plan of Reorganization dated May 30, 2013, and will be referred to as the "<u>Plan</u>," a copy of which is attached hereto as **Exhibit A**.  Because no other modifications have been made to the April 23 Plan, the April 23 Plan will also be referred to below as the "Plan," except where clarity dictates reference to it as the April 23 Plan.

The Court, having reviewed and considered the Plan; the declaration of Patrick E. Johnson dated May 28, 2013, regarding ballot tabulation and voting (the "<u>Johnson Declaration</u>") (docket no. 681); the declaration of Chapter 11 Trustee, Duane H. Gillman dated May 28, 2013 in support of confirmation of the Plan (the "<u>Trustee Declaration</u>") (docket nos. 683, 684); the certificate of service for the "Solicitation Package" (docket no. 668); the Trustee's memorandum dated May 28, 2013 in support of confirmation of the Plan (docket no. 682); other evidence proffered and/or presented; the arguments of counsel; and other matters presented to the Court, and after due deliberation thereon and good and sufficient cause appearing therefore,

2

**THE COURT FINDS AND CONCLUDES THAT:**[2]

A.    <u>Confirmation Hearing</u>.  On May 30, 2013, the Court held a hearing to consider confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b)(2).

B.    <u>Ballot Report</u>.  On May 28, 2013, the Trustee submitted the Johnson Declaration certifying the method and results of the ballot tabulation for each Class entitled to vote to accept or reject the Plan under Bankruptcy Rule 3018.

C.    <u>Jurisdiction and Venue</u>. The Court has jurisdiction over the Debtor's chapter 11 case under 18 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.    <u>The Disclosure Statement and Voting Procedures Order</u>.  By Order entered April 25, 2013, (docket no. 665) the Court approved the Disclosure Statement for the Plan (docket no. 665) as containing adequate information and also approved voting and vote solicitation procedures and dates, notice for the hearing on confirmation of the Plan, and scheduled the confirmation hearing on the Plan (the "<u>Disclosure Statement and Voting Procedures Order</u>").

E.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Debtor's chapter 11 case maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence

---

[2] These findings of fact and conclusions of law shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 (the "<u>Bankruptcy Rules</u>"), made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

SLC_1409084.2

and arguments made, proffered, or adduced at, the hearings held before the Court during the

pendency of this chapter 11 case.

F.      Objections.  No Objections to confirmation of the Plan were filed.

G.      Modification to the April 23 Plan Not Material.  The modification to the April 23

Plan announced at the hearing on confirmation is not material and the Trustee does not need to

provide further notice or seek further voting on the Plan, nor is time extended for parties to

object to the Plan.

H.      Trustee Declaration.  At the Confirmation Hearing, the Trustee proffered, and the

Court received into evidence, the Trustee Declaration.  No other party in interest objected to the

proffer or submitted other evidence.  The evidence included within the Trustee Declaration is

incorporated herein as part of the Court's findings of fact.

I.      Oral Findings of Fact Incorporated. All oral findings of fact and conclusions of

law entered by the Court at the Confirmation Hearing are incorporated herein by this reference,

in accordance with Bankruptcy Rule 7052(a).

J.      Transmittal and Mailing of Materials; Notice. In accordance with Bankruptcy

Rule 2002, the Court finds and concludes that sufficient notice of the hearing on confirmation of

the Plan and of the time for filing objections to the Plan was provided to holders of Claims and

Interests and to the Debtor in accordance with the requirements of the Bankruptcy Code and

Bankruptcy Rules.  The Disclosure Statement, the Plan, the Disclosure Statement and Voting

Procedures Order, Ballots, and the Notice of Hearing on confirmation of the Plan and deadlines

related thereto were transmitted and served in compliance with the Bankruptcy Code and the

Bankruptcy Rules, and such transmittal and service were adequate and sufficient.

SLC_1409084.2

K.    <u>Solicitation</u>.  In accordance with Section 1126(b) of the Bankruptcy Code, the Court finds and concludes that:  (a) the solicitation of votes to accept or reject the Plan complied with applicable law governing the adequacy of disclosure in connection with the solicitation; and (b) the solicitation was conducted after disclosure of adequate information, as defined in Section 1125(a) of the Bankruptcy Code.

L.    <u>Ballots</u>.  All procedures used to distribute Ballots to holders of Claims and Interests and to tabulate the Ballots were conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the local rules of this Court.

M.    <u>The Plan Reasonably Classifies Claims and Interests (11 U.S.C. § 1122(a))</u>.  The classification of Claims and Interests under the Plan complies with Section 1122(a) of the Bankruptcy Code.

N.    <u>The Plan Designates all Classes (11 U.S.C. § 1123(a)(1))</u>.  The Plan properly designates all Classes of Claims and Interests in accordance with the requirements of Section 1123(a)(1) of the Bankruptcy Code.

O.    <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  The Plan specifies the Classes of Claims and Interests which are unimpaired or impaired in accordance with the requirements of Section 1123(a)(2) of the Bankruptcy Code.

P.    <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  The Plan specifies the treatment of each Class of Claims and Interests in accordance with the requirements of Section 1123(a)(3) of the Bankruptcy Code.

Q.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides the same treatment for each Claim and Interest in a particular Class, unless the holder of a particular Claim

SLC_1409084.2

or Interest in such a Class has agreed to a less favorable treatment of such Claim or Interest.

Therefore, the Plan complies with and satisfies the requirements of Section 1123(a)(4) of the

Bankruptcy Code.

      R.      <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides

adequate, proper, and legal means for its implementation including, without limitation,

provisions of the Plan which provide for the contribution by Mr. Ray Okelberry of a "New Value

Contribution," as provided under the Plan.  The New Value Contribution appears to be in an

amount sufficient to pay all Allowed Claims under the Plan in full and to return a payment to

holders of equity Interests.  Therefore, the Plan complies with and satisfies the requirements of

Section 1123(a)(5) of the Bankruptcy Code.

      S.      <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>

<u>(11 U.S.C. §  1123(b)(2))</u>.  Article VIII of the Plan identifies executory contracts and unexpired

leases to be assumed.  It appears that there are no current executory contracts of unexpired leases

so that no contracts or leases need to be assumed or rejected.

      T.      <u>The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan

complies with all applicable provisions of the Bankruptcy Code, and, as required pursuant to

Bankruptcy Rule 3016(a), is dated and identifies the Trustee as the proponent of the Plan.

Therefore, the Plan satisfies the requirements of Section 1129(a)(1) of the Bankruptcy Code.

      U.      <u>Plan Proponent's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Trustee has complied with the applicable provisions of the Bankruptcy Code, including,

without limitation, Sections 1125 and 1126 of the Bankruptcy Code and have satisfied the

requirements of Section 1129(a)(2) of the Bankruptcy Code.

SLC_1409084.2

V.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan is proposed in

good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the

Bankruptcy Code.

W.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any

payment made or to be made by the Trustee for services or for costs and expenses in connection

with this chapter 11 case, including all administrative expense claims under Section 503 of the

Bankruptcy Code, or in connection with the Plan and incident to this chapter 11 case, has been

approved by, or is subject to, the approval of the Court as reasonable, thereby satisfying Section

1129(a)(4) of the Bankruptcy Code.

X.    <u>No Government Regulation of Rates (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6)

of the Bankruptcy Code is satisfied because the business of the Debtor is not subject to

governmental regulation of rates.

Y.    <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>. The liquidation analysis contained in

the Disclosure Statement and in other evidence proffered or adduced at or prior to the hearing on

confirmation, including the Trustee Declaration, has not been contradicted by other evidence.

The methodology used and assumptions made in connection with the liquidation analysis are

reasonable.  With respect to each Class of impaired Claims or Interests, each holder of a Claim

or Interest in such Class has either (a) accepted the Plan or (b) will receive or retain under the

Plan on account of such Claim or Interest, property of a value, as of the Effective Date of the

Plan, that is not less than the amount that such holder would so receive or retain if the Debtor

were liquidated on such date under chapter 7 of the Bankruptcy Code.  Therefore, the Plan

satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

SLC_1409084.2

Z.     Acceptance and Deemed Acceptance of Plan (11 U.S.C. § 1129(a)(8)).  As

further described in the Johnson Declaration, all Classes of Claims or Interests voting on the Plan

have accepted the Plan, and the Plan thus satisfies the requirements of Section 1129(a)(8) of the

Bankruptcy Code.

AA.    Treatment of Administrative and Priority Tax Claims and Other Priority Claims

(11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims under the Plan satisfies the

requirements of Section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of

Priority Tax Claims under the Plan complies with and satisfies Section 1129(a)(9)(C) of the

Bankruptcy Code.

BB.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  As further described

in the Johnson Declaration, at least one Class of Impaired Claims has accepted the Plan.  All

Classes are impaired and all with holders of Claims voted to accept the Plan.  The requirements

of Section 1129(a)(10) of the Bankruptcy Code are, therefore, satisfied.

CC.    Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered and/or presented

by the Trustee with respect to feasibility of the Plan is persuasive and credible and has not been

controverted by other evidence.  Confirmation of the Plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the Debtor, and the Plan therefore

satisfies Section 1129(a)(11).

DD.    Payment of Fees (11 U.S.C. § 1129(a)(12)). To the extent that all fees payable to

the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for

the payment of all such fees within thirty (30) days after the Effective Date of the Plan, and as

they come due thereafter.  Accordingly, the Plan satisfies Section 1129(a)(12) of the Bankruptcy

Code.

      EE.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(l3))</u>. No retiree benefits, as

that term is defined in Section 1114 of the Bankruptcy Code, are currently owing or will be

owing by the Debtor in this chapter 11 case, thereby making Section 1129(a)(13) of the

Bankruptcy Code inapplicable.

      FF.    <u>No Cramdown Is Required (11 U.S.C. § 1129(b)</u>.  Because all Classes of Claims

and Interests with members have voted to accept the Plan, no cramdown under Section 1129(b)

of the Bankruptcy Code is required.

      GG.    <u>No Other Plan (11 U.S.C. § 1129(c))</u>.  Other than the Plan, no plan has been filed

in the Debtor's chapter 11 case.  The requirements of Section 1129(c) of the Bankruptcy Code

have been satisfied.

      HH.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the

Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933, and there has been no objection filed by any governmental unit asserting

such avoidance.  The Plan complies with Section 1129(d) of the Bankruptcy Code.

      II.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Trustee and his attorneys and

advisers have solicited votes to accept or reject the Plan in good faith and in compliance with the

applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and are, therefore,

entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

      JJ.    <u>Transactions Contemplated by the Plan</u>.  The transactions contemplated by the

Plan, including the pledge of the Debtor's Assets, free and clear of existing liens, to secure a loan

in the amount of the New Value Contribution to Okelberry as provided for in Section 8.2 of the

Plan, are appropriate and the Trustee and the Reorganized Debtor should be authorized to

execute necessary and appropriate documents to consummate these transactions.

KK.    <u>Release, Exculpation, and Injunction</u>.  The release, exculpation, and injunction

provisions set forth in Sections 13.3, 13.4, and 13.5 of the Plan (i) are within the jurisdiction of

the Court under 28 U.S.C. §§ 1334(a), (b) and (d); (ii) are an essential means of implementing

the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code; (iii) confer material benefits on,

and thus are in the best interests of, the Debtor's estate; and (iv) are, in the facts and

circumstances of the Debtor's chapter 11 case, consistent with and permitted pursuant to

Sections 105, 524, 1123, 1129 and all other applicable provisions of the Bankruptcy Code.

LL.    <u>Conditions to Confirmation</u>.  Upon entry of these Findings of Fact and

Conclusions of Law and the related confirmation Order becoming a Final Order, all conditions to

Confirmation of the Plan set forth in Section 10.1 of the Plan have been satisfied or waived.

MM.    <u>Retention of Jurisdiction</u>. The Court's retention of jurisdiction as set forth in

Article XII of the Plan comports with applicable law, including 28 U.S.C. § 157.

*   *   *   *   **END OF DOCUMENT**   *   *   *   *   *

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF TRUSTEE'S PLAN OF REORGANIZATION DATED MAY 30, 2013** shall be served on the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

- John T. Anderson janderson@aklawfirm.com, jsorensen@aklawfirm.com
- Michael W. Baldwin michael.baldwin@azbar.org, rangerp77@yahoo.com; wdla.utah@gmail.com
- Julie A. Bryan julie@crslaw.com, diana@crslaw.com;josh@crslaw.com
- Kenneth L. Cannon kcannon@djplaw.com, khughes@djplaw.com
- Joseph M.R. Covey calendar@parrbrown.com
- Tim Dance tdance@swlaw.com, docket_slc@swlaw.com;snielsen@swlaw.com
- Shelton L. Freeman tfreeman@flfaz.com, lbray@flfaz.com, jsnyder@flfaz.com, sdousdebes@flfaz.com
- Dale F. Gardiner dgardiner@vancott.com, docketing@vancott.com
- Donald D. Gilbert donalddgilbert@gmail.com, dongilbert@live.com; dgilbert@utahvalleylaw.com
- Duane H. Gillman dhgnotice@djplaw.com
- George B. Hofmann gbh@pkhlawyers.com, dh@pkhlawyers.com
- Patrick E Johnson pjohnson@djplaw.com
- Barton H. Kunz bart.kunz@chrisjen.com, jan.peterson@chrisjen.com
- Ryan Lambert rlambert@co.wasatch.ut.us
- Scott M. Lilja slilja@vancott.com, docketing@vancott.com
- Benjamin J. Mann ben@halliday-watkins.com
- J. Grant Moody jgmoodylaw@cs.com, jgmoody@utahvalleylaw.com;
- John T. Morgan tr john.t.morgan@usdoj.gov, James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Rinehart.Peshell@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Douglas J. Payne dpayne@fabianlaw.com, smcnett@fabianlaw.com
- R. Craig Schneider randall.c.schneider@irscounsel.treas.gov
- Robert H. Scott robert.scott@akerman.com, toni.domres@akerman.com; debby.esler@akerman.com; michelle.milne@akerman.com; aubrey.mitchell@akerman.com; tracey.wayne@akerman.com
- Jeremy C. Sink jeremy@mbt-law.com
- Victor A. Sipos sipos@utahlitigation.org, docket@utahlitigation.org
- Rebecca H. Skordas rhyde@schhlaw.com, jjeppson@schhlaw.com
- Gerald H. Suniville gsuniville@vancott.com, docketing@vancott.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- T. Edward Williams ewilliams@wmsllp.com
- Kim R. Wilson bankruptcy_krw@scmlaw.com
- Gale K. x6Francis txbk@utah.gov

# EXHIBIT A

Duane H. Gillman # 1194
dgillman@djplaw.com
Kenneth L. Cannon II, # 3705
kcannon@djplaw.com
Patrick E. Johnson #10771
pjohnson@djplaw.com
**DURHAM JONES & PINEGAR, P. C.**
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000
Facsimile:  (801) 415-3500

Attorneys for Duane H. Gillman, Chapter 11 Trustee

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In Re:                              | Bankruptcy Case Number |
|-------------------------------------|------------------------|
| WEST DANIELS LAND ASSOCIATION, INC., | 09-32502 RKM           |
| Debtor.                             | Chapter 11             |

### TRUSTEE'S CONFIRMED PLAN OF REORGANIZATION DATED MAY 30, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

INTRODUCTION ........................................................................................................ 1

ARTICLE I. - SUMMARY ...................................................................................... 2

ARTICLE II - DEFINITIONS ................................................................................. 2

ARTICLE III. - TREATMENT OF ADMINISTRATIVE EXPENSE
CLAIMS AND PRIORITY TAX CLAIMS ........................................................ 8

   3.1    Unclassified Claims ................................................................ 8

   3.2    Administrative Expense Claims ............................................. 8

   3.3    United States Trustee Fees ..................................................... 8

   3.4    Priority Tax Claims ................................................................ 8

ARTICLE IV. - CLASSIFICATION OF CLAIMS AND INTERESTS ............ 9

   4.1    Class 1 ..................................................................................... 9

   4.2    Class 2 ..................................................................................... 9

   4.3    Class 3 ..................................................................................... 9

   4.4    Class 4 ..................................................................................... 9

   4.5    Class 5 ..................................................................................... 9

   4.6    Class 6 ..................................................................................... 9

   4.7    Class 7 ..................................................................................... 9

   4.8    Class 8 ..................................................................................... 9

   4.9    Class 9 ..................................................................................... 9

   4.10   Class 10 ................................................................................. 10

   4.11   Class 11 ................................................................................. 10

   4.12   Class 12 ................................................................................. 10

ARTICLE V. - TREATMENT OF CLAIMS AND INTERESTS UNDER
THE PLAN ......................................................................................................... 10

SLC_1360904.4

ARTICLE VI. - DISTRIBUTION ACCOUNT AND AGENT, DISTRIBUTIONS UNDER THE PLAN, OBJECTIONS TO CLAIMS, AND ALLOWANCE AND DISALLOWANCE OF DISPUTED CLAIMS ........................................................ 13

    6.1    Creation of the Distribution Account....................................................... 13

    6.2    Distributions Free and Clear ................................................................... 13

    6.3    Timing of Distributions........................................................................... 13

    6.4    Delivery of Distributions ........................................................................ 13

    6.5    Undeliverable and Unclaimed Distributions............................................ 14

    6.6    Objections to Claims and Resolution of Disputed Claims........................ 15

    6.7    Disputed Claims...................................................................................... 15

ARTICLE VII. - EXECUTORY CONTRACTS AND UNEXPIRED LEASES............. 16

    7.1    Executory Contracts and Unexpired Leases ............................................ 16

    7.2    Confirmation Order Constitutes Order Approving Assumption or Rejection of Executory Contracts and Unexpired Leases..................................... 17

    7.3    Rejection Damages Bar Date ................................................................... 18

ARTICLE VIII. - MEANS FOR IMPLEMENTATION OF THE PLAN....................... 18

    8.1    Funds Available for Distribution under the Plan ..................................... 18

    8.2    New Value Contribution .......................................................................... 18

    8.3    Reorganized Debtor ................................................................................ 18

ARTICLE IX. - DISCHARGE OF THE DEBTOR ...................................................... 19

ARTICLE X. - CONDITIONS PRECEDENT ............................................................. 20

    10.1    Conditions to Confirmation .................................................................... 20

    10.2    Conditions to Effective Date.................................................................... 20

ARTICLE XI. - ALTERNATIVES IF THE NEW VALUE CONTRIBUTION IS NOT MADE AND THE PLAN IS NOT CONSUMMATED......................................... 20

ARTICLE XII. - RETENTION OF JURISDICTION .................................................... 21

ARTICLE XIII. - GENERAL PROVISIONS ................................................................. 23

13.1   Time Limit for Filing Objections to Claims ............................................. 23

13.2   Administrative Expense Claims Bar Date ................................................ 23

13.3   Releases.................................................................................................... 24

13.4   Exculpations............................................................................................. 24

13.5   Injunction ................................................................................................. 25

13.6   Modification of the Plan .......................................................................... 25

13.7   Withdrawal or Revocation of the Plan..................................................... 26

13.8   Effectuating Documents and Further Transactions................................... 26

13.9   Severability ............................................................................................. 26

13.10  Governing Law ........................................................................................ 27

13.11  Binding Effect.......................................................................................... 27

13.12  Captions ................................................................................................... 27

13.13  Payment of Statutory Fees ...................................................................... 27

13.14  Notices ..................................................................................................... 28

13.15  Retention of Causes of Action/Reservation of Rights ............................. 28

13.16  Section 506(c) Reservation ..................................................................... 29

13.17  Confirmation Request .............................................................................. 29

## **INTRODUCTION**

Duane H. Gillman, the Court-appointed trustee in this chapter 11 reorganization case (the

"Trustee") hereby proposes the following plan of reorganization (the "Plan") pursuant to section

1121(c) of title 11, United States Code (the "Bankruptcy Code") for West Daniels Land

Association, Inc. (the "Debtor").  Reference is made to the Disclosure Statement (as defined

herein) for the background, assets, prior results of operations, risk factors, a summary and

analysis of the Plan (as defined herein) and certain related matters.  The Trustee is the proponent

of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot

be solicited from a holder of a Claim or Interest until such time as the Disclosure Statement has

been approved by the Bankruptcy Court and distributed to holders of Claims and Interests.  ALL

HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN

AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO

ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the

Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Plan, the Trustee expressly reserves the right to alter, amend, or modify the Plan,

one or more times, in accordance with Section 13.6 herein, before its substantial consummation;

provided however, that any amendment or modification made after the Voting Deadline that

materially and adversely alters the treatment of any Class entitled to a distribution under the Plan

shall require the approval of either (i) the Bankruptcy Court or (ii) the affected Class.

1

## ARTICLE I.
## <u>SUMMARY</u>

The Plan proposes to pay creditors of the Debtor from proceeds of the New Value

Contribution to be made by Ray Okelberry as set forth in this Plan.  The Plan provides for the

treatment of unclassified Administrative Expense Claims and Priority Tax Claims, designates

one class of Priority Claims, eight classes of Secured Claims, one class of Unsecured Claims,

and one class of equity Interests. This Plan provides for the payment of Administrative Expense

Claims and Priority Claims, for the treatment and payment of Secured Claims and Unsecured

Claims, and for the treatment of equity Interests.

All creditors and equity security holders should refer to Articles III through V of this Plan

for information regarding the precise treatment of their Claims and Interests.  A Disclosure

Statement that provides more detailed information regarding this Plan and the rights of creditors

and equity security holders has been provided with this Plan.  **Your rights may be affected.**

**You should read these papers carefully and discuss them with your attorney, if you have**

**one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II.
## <u>DEFINITIONS</u>

The definitions and rules of construction set forth in sections 101 and 102 of the

Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

Otherwise, terms used in this Plan will have the following definitions:

2.1    "<u>Administrative Expense Claim</u>" means a Claim (which is not a Secured Claim)

for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy

Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including,

but not limited to, the actual, necessary costs and expenses, or preserving the estates and

2

operating the business of the Debtor, including wages, salaries or commissions for services

rendered after the commencement of the Bankruptcy Case, Professional Claims, and all fees and

charges assessed against the estates under chapter 123 of title 28, United States Code, accruing

from and after the Petition Date to and including the Confirmation Date.

      2.2     "<u>Administrative Expense Claims Bar Date</u>" means the date fixed pursuant to

Section 13.2 of the Plan by which certain Administrative Expense Claims must be filed.  This

date is thirty (30) days after the Effective Date.

      2.3     "<u>Allowed . . .</u>" means an Allowed Claim or Interest of the particular type or Class

described.

      2.4     "<u>Allowed Claim</u>" means a Claim or any portion thereof (a) that has been allowed

by a Final Order, (b) as to which, on or by the Effective Date (i) no proof of claim has been filed

with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is

Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed,

(c) for which a proof of claim in a liquidated amount has been filed pursuant to the Bankruptcy

Code or any order of the Bankruptcy Court and as to which either (x) no objection to its

allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code

or any order of the Bankruptcy Court or (y) any objection to its allowance has been settled,

waived through payment or withdrawn, or has been denied by a Final Order or (d) that is

expressly allowed in a liquidated amount in the Plan.

      2.5     "<u>Assets</u>" means all property of the Estate as defined in section 541 of the

Bankruptcy Code including, without limitation, any causes of action commenced by the Debtor

SLC_1360904.4

on or before the Confirmation Date, except for causes of action arising under Chapter 5 of the Bankruptcy Code.

2.6     "Ballot" means each of the ballot forms distributed to each holder of an impaired Claim or Interest on which the holder of such Claim or Interest is to indicate acceptance or rejection of this Plan.

2.7     "Bankruptcy Case" depending on context, means the chapter 11 reorganization case of the Debtor.

2.8     "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 et seq., commonly referred to as the Bankruptcy Code.

2.9     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Utah, Central Division or such other court as may have jurisdiction over the Debtor's Bankruptcy Case.

2.10     "Bar Date" means March 16, 2010, the deadline for filing proofs of claim for Claims.

2.11     "Business Day" means any day other than a Saturday, Sunday, or legal holiday as defined in Bankruptcy Rule 9006(a).

2.12     "Claim" means a claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

2.13     "Class" means a group of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

2.14     "Closing" means the Closing of the New Value Contribution.

2.15     "Closing Date" means the date on which the Closing occurs.

4

2.16    "Confirmation Date" means the date the Confirmation Order is entered on the

docket of the Bankruptcy Court.

2.17    "Confirmation Order" means the order of the Bankruptcy Court approving the

Plan pursuant to section 1129 of the Bankruptcy Code and related sections thereof.

2.18    "Debtor" means West Daniels Land Association, Inc.

2.19    "Disclosure Statement" means the Disclosure Statement with Respect to the

Trustee's Plan of Reorganization Dated April 23, 2013.

2.20    "Disputed Claim" means (a) any Claim as to which the Trustee or any other party

in interest has interposed a timely objection or request for estimation in accordance with the

Bankruptcy Code or the Bankruptcy Rules, which objection has not been withdrawn or

determined by a Final Order, and (b) any Claim scheduled as contingent, unliquidated, or

disputed, where a proof of claim has not been timely filed.

2.21    "Distribution Account" means the segregated account under the control of the

Trustee created to hold the New Value Contribution and to make distributions as required under

this Plan.  The Trustee may create other deposit accounts for reserves for Disputed Claims.

2.22     "Effective Date" means the first business day after the Confirmation Order

becomes a Final Order.  The Trustee will give notice of the Effective Date as early as possible

after that date.

2.23    "Estate" means the property of the Debtor as defined in section 541 of the

Bankruptcy Code.

2.24    "Final Order" means an order or a judgment as to which (i) the time to appeal or

to seek review, rehearing or certiorari has expired pursuant to Rule 8002 of the Bankruptcy Rules

5

and (ii) (a) no appeal or petition for review, rehearing or certiorari is pending or (b) in the case of appeal, the enforceability of such order or judgment has not been stayed, or any such stay is no longer in effect.

2.25    "Impaired" when used with respect to any Claim, Interest or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

2.26    "Interests" means the rights of the equity interest holders in the Debtor prior to the Confirmation Date.

2.27    "New Value Contribution" means the funds paid into the Distribution Account by Okelberry to purchase all of the equity in the Reorganized Debtor.  This shall be in an amount sufficient to pay all Allowed Claims in full (including with interest thereon, if ordered by the Court) and to make a distribution to holders of Allowed Interests sufficient to confirm the Plan, but not to exceed $2,683,082.00.

2.28    "Okelberry" means Ray Okelberry, holder of an existing Interest in the Debtor, who shall make the New Value Contribution.

2.29    "Person" shall have the meaning as set forth in section 101(41) of the Bankruptcy Code.

2.30    "Petition Date" means November 10, 2009, the date on which the Debtor filed its chapter 11 petition.

2.31    "Plan" means this plan of reorganization, and all exhibits hereto, as the same may be modified or amended from time to time as and to the extent permitted herein or by the Bankruptcy Code.

2.32    "Plan Proponent" means the Trustee.

6

2.33    "Priority Claim" means the portion of a Claim entitled to priority under section

507(a) of the Bankruptcy Code, but excluding Administrative Expense Claims and Priority Tax

Claims.

2.34    "Priority Tax Claim" means a claim of a governmental unit of the kind specified

in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

2.35    "Reorganized Debtor" means West Daniels Land Association after the Effective

Date.

2.36    "Schedules" means the schedules of assets and liabilities filed by the Debtor in

accordance with Bankruptcy Rule 1007(b).

2.37    "Secured Claim" means a Claim secured by a valid, perfected, and enforceable

lien on some or all of the Assets, to the extent of the value of the interest of the holder of such

Secured Claim in such Assets as determined by the Bankruptcy Court pursuant to section 506(a)

of the Bankruptcy Code.

2.38    "Secured Creditor" means the holder of a claim which is secured by a valid,

perfected and enforceable lien on property of a Debtor, to the extent of the value of the interest

of the holder of such secured claim in such property as determined by the Bankruptcy Court

pursuant to section 506(a) of the Bankruptcy Code or as acknowledged in writing by the Debtor.

2.39    "Trustee" means Duane H. Gillman, who was appointed as chapter 11 trustee by

Order of the Bankruptcy Court entered February 9, 2012 (ECF 369).  Since his appointment, the

Trustee has administered the Bankruptcy Case and, pursuant to the terms of this Plan, he will

also deposit the New Value Contribution into the Distribution Account and make distributions on

account of Allowed Claims from the Distribution Account.

SLC_1360904.4

2.40   "Unsecured Claim" means a Claim, which is not entitled to priority under section 507(a) of the Bankruptcy Code and which is not secured by a valid, perfected security interest or lien and including a Claim, if any, arising from the rejection of an executory contract.

### ARTICLE III.
### TREATMENT OF ADMINISTRATIVE EXPENSE
### CLAIMS AND PRIORITY TAX CLAIMS

3.1   Unclassified Claims.  Under section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not in classes.

3.2   Administrative Expense Claims.  Each holder of an Allowed Administrative Expense Claim allowed under section 503 of the Bankruptcy Code will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  As provided in Section 13.2 below, any unpaid Administrative Expense Claim, other than ones arising in the ordinary course of business, arising through the Effective Date must be filed with the Court by the Administrative Expense Claims Bar Date, or be forever barred from receiving any distribution on account of such unpaid Administrative Expense Claim.

3.3   United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue, including any fees due in connection with distributions under the Plan, and be timely paid until the Bankruptcy Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

3.4   Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim will receive payment in full on the Effective Date, or when such Priority Tax Claim becomes Allowed, with applicable interest.

8

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following Classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code.

4.1     Class 1.  Class 1 consists of all Allowed Priority Claims other than Administrative Expense Claims and Priority Tax Claims.

4.2     Class 2.  Class 2 consists of the Allowed Secured Claim of Snow, Christensen & Martineau.

4.3     Class 3.  Class 3 consists of the Allowed Secured Claim of Anderson & Karrenberg.

4.4     Class 4.   Class 4 consists of the Allowed Secured Claim of Burda Revocable Living Trust ("Burda Trust").

4.5     Class 5.  Class 5 consists of the Allowed Secured Claim of Salmon River Properties, LLC ("Salmon River").

4.6     Class 6.  Class 6 consists of the Allowed Secured Claim of Gregory G. Skordas.

4.7     Class 7.  Class 7 consists of the Allowed Secured Claim of Julian D. Jensen.

4.8     Class 8.  Class 8 consists of the Allowed Secured Claim of Kent L. Cooper Trust ("Cooper Trust").

4.9     Class 9.  Class 9 consists of the Allowed Secured Claim of Cooper Holdings, LLC, as to an undivided 40% interest as a tenant in common; Watts Gwilliam & Co., LLC 401(k) Profit Sharing Plan FBO David Bruce Watts, as to an undivided 20% interest as a tenant in common; Watts Gwilliam & Co., LLC 401(k) Profit Sharing Plan FBO Daniel Bradford Gwilliam, as to an undivided 20% interest as a tenant in common; and Watts Gwilliam & Co.,

9

LLC 401(k) Profit Sharing Plan FBO Jeffrey Stephen Watts, as to an undivided 20% interest as a

tenant in common (together, "Cooper Holdings, *et al.*").

4.10    Class 10.  Class 10 consists of the Allowed Secured Claim, if any, of Patton's

Triumph, LLC ("Patton's Triumph").

4.11    Class 11.  Class 11 consists of Allowed Unsecured Claims.

4.12    Class 12.  Class 12 consists of Allowed Interests.

## ARTICLE V.
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Allowed Claims and Interests will be treated under the Plan as follows:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Impaired | Allowed Class 1 Priority Claims shall be paid in full in cash on the Effective Date, or, if Allowed later, on the date Allowed. |
| Class 2 – Secured Claim of Snow, Christensen & Martineau | Impaired | The Allowed Class 2 Secured Claim of Snow, Christensen & Martineau shall be paid in full in cash on the Effective Date.  Any deficiency will be treated as an Allowed Unsecured Claim in Class 11.  If the Allowed Secured and Unsecured Claims of this claimant are transferred to Okelberry prior to Closing, Okelberry may offset amounts owed hereon against his New Value Contribution, though the amount of this Claim will be treated as a distribution made by the Trustee under this Plan. |
| Class 3 – Secured Claim of Anderson & Karrenberg | Impaired | The Allowed Class 3 Secured Claim of Anderson & Karrenberg shall be paid in full in cash on the Effective Date.  Any deficiency will be treated as an Allowed Unsecured Claim in Class 11.  If the Allowed Secured and Unsecured Claims of this claimant are transferred to Okelberry prior to Closing, Okelberry may offset amounts owed hereon against his New Value Contribution, though the amount of this Claim will be treated as a distribution made by the Trustee under this Plan. |

10

| Class 4 – Secured Claim of Burda Revocable Living Trust | Impaired | The Allowed Class 4 Secured Claim of Burda Trust shall be treated either by permitting Burda Trust to foreclose on its trust deed on property transferred to it by the Debtor or by Burda Trust receiving from the Trustee a deed in lieu of foreclosure; in either case, the transfer will be in full satisfaction of all Burda Trust's claims against the Debtor. |
|---|---|---|
| Class 5 – Secured Claim of Salmon River Properties, LLC | Impaired | The Allowed Class 5 Secured Claim of Salmon River shall be paid in full in cash on the Effective Date.  Further, pursuant to the settlement the Trustee has reached with Salmon River, real property previously transferred to it by the Debtor and 49% of the ownership of Salmon River will be transferred to the Trustee to be included in the Debtor's Estate. |
| Class 6 – Secured Claim of Gregory G. Skordas | Impaired | The Allowed Class 6 Secured Claim of Gregory G. Skordas shall be treated by permitting Skordas to retain the property that was transferred to him by the Debtor in full satisfaction of all of his Allowed Secured Claim against the Debtor.  Any deficiency will be treated as an Allowed Unsecured Claim in Class 11. |
| Class 7 – Secured Claim of Julian D. Jensen | Impaired | The Allowed Class 7 Secured Claim of Julian D. Jensen shall be paid in full in cash on the Effective Date.  Any deficiency will be treated as an Allowed Unsecured Claim in Class 11.  If the Allowed Secured and Unsecured Claims of this claimant are transferred to Okelberry prior to Closing, Okelberry may offset amounts owed thereon against his New Value Contribution, though the amount of this Claim will be treated as a distribution made by the Trustee under this Plan. |
| Class 8 – Secured Claim of Kent L. Cooper Trust | Impaired | The Allowed Class 8 Secured Claim of Cooper Trust shall be treated by permitting Cooper Trust to retain the property that was transferred to it by the Debtor in full satisfaction of all of Cooper Trust's claims against the Debtor. |
| Class 9 – Secured Claim of Cooper Holdings, *et al.* | Impaired | The Allowed Class 9 Secured Claim of Cooper Holdings, *et al.* shall be treated by permitting Cooper Holdings, *et al.* to retain the property that was transferred to it by the Debtor in full satisfaction of all of Cooper Holdings, *et al.'s* claims against the Debtor. |

11

| Class 10 – Secured Claim of Patton's Triumph, LLC | Impaired | The Allowed Class 10 Secured Claim of Patton's Triumph, LLC, shall receive no distribution pursuant to a settlement with the Trustee, which settlement also provides for the dismissal of the Adversary Proceeding as to Patton's Triumph and for the transfer by Patton's Triumph of 640 acres and all other assets of Patton's Triumph to the Debtor's estate, if the proposed settlement is approved and consummated before confirmation of the Plan, or to the Reorganized Debtor, if the proposed settlement is approved and consummated after confirmation of the Plan. |
|---|---|---|
| Class 11 – General Unsecured Claims | Impaired | Allowed Class 11 General Unsecured Claims shall be paid in full in cash on the Effective Date.  If any Allowed Claims in this Class are transferred to Okelberry prior to Closing, Okelberry may offset amounts owed on those Allowed Claims against his New Value Contribution, though the amounts distributed on account of these Claims will be treated as distributions made by the Trustee under this Plan. |
| Class 12 – Equity Interests in Debtor | Impaired | Allowed Class 12 Equity Interests shall receive funds remaining in the Distribution Account after the payment of all Allowed Claims as set forth above.  Distributions will be in amounts based on holders of Allowed equity Interests' percentage ownership of the Debtor.  Okelberry owns 85% of the Interests in the Debtor.  Distributions based on the percentage ownership of the Debtor will be made first to the holder or holders of the other 15% of Allowed Interests.  Distribution of $50,000.00 will be made first on account of the 15% equity interest in the Debtor, of which $10,000.00 will be paid to the trustee in the Stars and Stripes Properties, LLC bankruptcy case as a 506(a)(2)(c) surcharge, subject to bankruptcy court approval in the Stars and Stripes bankruptcy proceeding, pending in the United States District Court for the District of Arizona, $23,989.00 will be paid to Steve Bethers, and $16,011.00 will be paid to Bob Gappmayer, also subject to bankruptcy court approval in the Stars and Stripes bankruptcy proceeding. |

12

**ARTICLE VI.**
**DISTRIBUTION ACCOUNT AND AGENT, DISTRIBUTIONS UNDER**
**THE PLAN, OBJECTIONS TO CLAIMS, AND ALLOWANCE**
**AND DISALLOWANCE OF DISPUTED CLAIMS**

6.1     Creation of the Distribution Account.  The Distribution Account shall be created

to hold and administer the New Value Contribution and to make distributions on account of

Allowed Claims.  The Trustee shall administer the Distribution Account.  The Trustee shall

maintain the bond he obtained prior to the Effective Date as Trustee or obtain a new bond which

shall comply with the bond requirements of the United States Trustee, provided, however, that

the Trustee's post-confirmation bond shall not be required to be in an amount greater than the

amount of his bond as of the Confirmation Date.

6.2     Distributions Free and Clear.  Except as otherwise provided in the Plan, any

distributions or transfers by or on behalf of the Distribution Account by the Trustee, including,

but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any

liens, claims, and encumbrances, and no other entity shall have any interest – legal, beneficial, or

otherwise – in assets transferred pursuant to the Plan.

6.3     Timing of Distributions.  In the event that any payment or act under the Plan is

required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day,

but shall be deemed to have been completed as of the required date.

6.4     Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to

any holder of an Allowed Claim shall be made at the address of such holder as set forth in proofs

of claim filed, on the schedules filed in the Bankruptcy Case, or on the books and records of the

Debtor.  The holder of an Allowed Claim must notify the Trustee in writing of a change of

13

address pursuant to the notice requirements set forth in Section 11.13 of the Plan.  The Trustee shall not be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein or in the Plan.

      6.5    <u>Undeliverable and Unclaimed Distributions</u>.

      6.5.1.  If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Trustee in writing of such holder's then-current address, at which time all missed distributions shall be made, subject to the provisions of subsection (c) of this Section 6.4, as soon as is practicable to such holder, without interest.

      6.5.2.  Checks issued by the Trustee in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made in accordance with the notice provisions of Section 11.13 of the Plan to the Trustee by the holder of the Allowed Claim to whom such check originally was issued.

      6.5.3.  All claims for undeliverable distributions or voided checks shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made.  After such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.  The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code shall not be entitled to any other or further distribution under the Plan on account of such Claim.

SLC_1360904.4

6.6     <u>Objections to Claims and Resolution of Disputed Claims</u>.  After the Effective

Date, the Trustee will have primary responsibility (except as to applications for allowances of

compensation and reimbursement of expenses under sections 328, 330 and 503 of the

Bankruptcy Code) to make, file, and prosecute objections to Claims.  Prior to the Confirmation

Date, other parties in interest may file and prosecute objections to Claims.  Following the

Confirmation Date, only the Trustee and Okelberry may file objections to Claims.  All objections

to Claims shall be litigated to a Final Order except to the extent that the objecting party elects to

withdraw such objection, or the Claim of the holder of the Disputed Claim is compromised,

settled, or otherwise resolved with approval of the Bankruptcy Court.

6.7     <u>Disputed Claims</u>.

6.7.1.   In connection with distributions to be made in respect of Allowed Claims,

the Trustee shall reserve from any distribution to the holder of a Disputed Claim the amount of

distribution which otherwise would be paid in respect to such Disputed Claim on the date

distributions are made to holders of Claims in the Class in which such Disputed Claim is

classified if the full amount of such Claim were deemed to be an Allowed Claim or such lesser

amount as the Bankruptcy Court may determine.

6.7.2.   Pending the determination of such Disputed Claim by the Bankruptcy

Court or resolution of such Dispute Claim through settlement, the Trustee shall reserve funds

equal to the amount so reserved or such lesser amount as the Bankruptcy Court may have

determined within fifteen (15) business days after the date on which such amount would

otherwise be distributed to the holder of such Claim.  Such funds shall be held by the Trustee as

long as such Claim remains a Disputed Claim.

15

6.7.3.  If, on or after the date distributions begin under this Plan, any Disputed Claim becomes an Allowed Claim the Trustee shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided in the Plan, distribute to the holder of such Allowed Claim an amount, with or without interest thereon based on the approved Plan treatment as set forth herein, that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the Class that were Allowed on the date distributions began under this Plan.

6.7.4.  To the extent that a Disputed Claim is disallowed or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  Any Disputed Claim, for which a proof of claim has not been deemed timely filed as of the Effective Date, shall be disallowed.

6.7.5.  Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Trustee for further distribution in accordance with this Plan.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Executory Contracts and Unexpired Leases.  Under section 365 of the Bankruptcy Code, the Trustee has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired leases.

7.1.1.  Assumed Executory Contracts and Unexpired Leases.  The Trustee, on behalf of the Debtor, hereby assumes the following executory contracts and/or unexpired leases effective upon the Effective Date:  the Trustee is unaware of any executory contracts or unexpired leases.

16

7.1.2.    <u>Payments Related to Assumption of Executory Contracts and Unexpired</u> <u>Leases</u>.  Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code by promptly curing same.  Non-Debtor parties to executory contracts and unexpired leases that are assumed shall file a proof of claim no later than twenty (20) days from the time an order approving the assumption is entered, unless that date is extended by the Bankruptcy Court.  The Trustee may object to such a cure claim within the time period for filing objections to Claims generally

7.1.3.    <u>Rejected Executory Contracts and Unexpired Leases</u>.  The Trustee, on behalf of the Debtor, hereby rejects the following executory contracts and/or unexpired leases effective upon the Effective Date (unless earlier rejected by separate motion):  the Trustee is unaware of any executory contracts or unexpired leases.

7.1.4.    <u>Executory Contracts and Unexpired Leases Not Otherwise Dealt with in</u> <u>the Plan Will Be Deemed Rejected</u>.  In addition, all executory contracts and unexpired leases not expressly assumed under Section 7.1.1. above, or before the date of the order confirming the Plan, shall be deemed rejected, as of the Effective Date.

7.2    <u>Confirmation Order Constitutes Order Approving Assumption or Rejection of</u> <u>Executory Contracts and Unexpired Leases</u>. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption and rejection of executory contracts and unexpired leases identified herein, or in a supplement to the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date, for executory contracts and unexpired leases.

17

7.3    <u>Rejection Damages Bar Date</u>.  If the rejection of an executory contract or

unexpired lease results in a Claim, then such Claim will be forever barred and will not be

enforceable for payment under this Plan or against the Debtor or the Reorganized Debtor unless

a proof of claim is filed with the Bankruptcy Court and served upon the Trustee, no later than

thirty (30) calendar days after entry of the Confirmation Order.  The Trustee may object to a

rejection damages Claim within the time period for filing objections to Claims generally.

**ARTICLE VIII.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

8.1    <u>Funds Available for Distribution under the Plan</u>.  The funds required for the

confirmation and performance of this Plan shall be provided from:  the New Value Contribution

from Okelberry, and other funds of the Debtor.

8.2    <u>New Value Contribution</u>.  On the Closing Date, there will be a simultaneous

closing in which the Reorganized Debtor, under the direction and control of Okelberry, pledges

the Debtor's Assets, free and clear of existing liens, to secure a loan in the amount of the New

Value Contribution to Okelberry and Okelberry delivers the New Value Contribution to the

Trustee to deposit into the Distribution Account.  Liens against the Debtor's Assets will attach to

the New Value Contribution.

8.3    <u>Reorganized Debtor</u>.

8.3.1.   <u>Reorganized Articles of Organization and Reorganized Operating</u>

<u>Agreement</u>.  The Reorganized Debtor shall adopt Reorganized Articles of Organization and By-

Laws prior to, but effective as of, the Effective Date.  As required by section 1123(a)(6) of the

Bankruptcy Code, the Reorganized Debtor's articles will include a provision prohibiting the

issuance of nonvoting equity securities.

18

8.3.2.   Director and Officers of the Reorganized Debtor.  The initial directors and officers of the Reorganized Debtor shall be:  Ray Okelberry, director and president, subject to substitution, which substitution, if any, will be disclosed in a supplement to the Plan.

# ARTICLE IX.
## DISCHARGE OF THE DEBTOR

9.1      The occurrence of distributions under this Plan shall discharge the Debtor, pursuant to the full extent of section 1141(d)(1) of the Bankruptcy Code, from any and all debts of and Claims against the Debtor that arose prior to such distributions, and any kind of debt specified in sections 502(g), (h) or (i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim based on such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) such Claim is allowed under section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.  On and after such date, as to every discharged debt and Claim, the Person or Entity that held such debt or Claim shall be precluded from asserting any such debt or Claim against the Debtor or the Reorganized Debtor or its property based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

9.2      The rights and treatment under the Plan of all Claims against and Interests in the Debtor shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date (if the approved Plan treatment provides for the accrual of interest on that type of Claim), against the Debtor, its estate, the Reorganized Debtor, the Assets, property, and interests in property.

19

SLC_1360904.4

## ARTICLE X.
## CONDITIONS PRECEDENT

10.1    Conditions to Confirmation.  The following are conditions precedent to

confirmation of the Plan.

10.1.1.    A disclosure statement with respect to the Plan shall be approved by

the Bankruptcy Court.

10.1.2.    The Confirmation Order shall be in form and substance reasonably

acceptable to the Trustee.

10.2    Conditions to Effective Date.  The following are conditions precedent to the

Effective Date.

10.2.1.    The New Value Contribution shall have been made.

10.2.2.    The Distribution Account shall have been created and opened.

10.2.3.    The Confirmation Order shall have been entered and have become a

Final Order.

## ARTICLE XI.
## ALTERNATIVES IF THE NEW VALUE CONTRIBUTION IS
## NOT MADE AND THE PLAN IS NOT CONSUMMATED

11.1    In the event that Okelberry defaults on his obligation to make the New Value

Contribution, this Plan will be null and void.  The Trustee will re-list the Assets for sale and seek

approval for the highest and best offer that the Trustee receives.  In addition, the Trustee will

seek to hold Okelberry liable to pay the difference between the value that the Debtor's Estate

would have realized through the New Value Contribution and the amount that the sale of the

Debtor's Assets to another party realizes.  The Trustee may file an alternative plan of

20

reorganization or seek to convert the Bankruptcy Case to a liquidation under chapter 7 of the

Bankruptcy Code.

## ARTICLE XII.
## RETENTION OF JURISDICTION

12.1    The Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case

to the fullest extent permitted by law for as long as necessary for the following purposes:

(a)    To determine any and all objections to the allowance, disallowance or

subordination of Claims or any controversy as to the classification of Claims.

(b)    To determine any and all applications for professional and similar fees and

for the reimbursement of disbursements and expenses.

(c)    To liquidate any disputed, contingent, or unliquidated Claims.

(d)    To determine any and all pending motions and applications for assumption

or rejection of executory contracts and leases and the allowance and classification of any Claims

resulting from the rejection of executory contracts and leases.

(e)    To determine any and all motions, applications, adversary proceedings,

contested and litigated matters, or such other matters over which the Bankruptcy Court had

jurisdiction prior to the Confirmation Date, including the enforcement, prosecution, litigation,

settlement, and/or other disposition of claims and counterclaims of the Debtor and to recover

preferences and fraudulent transfers.

(f)    To enforce the provisions of, and resolve any and all disputes under or

pertaining to the Plan, or the Debtor's Bankruptcy Case.

(g)    To modify the Plan or to correct any defect, cure any omission, or

reconcile any inconsistency in the Plan or in the order of the Bankruptcy Court confirming the

21

Plan, or to enter such orders as may be necessary to effectuate the terms and conditions of the

Plan to the extent authorized by the Bankruptcy Code as may be necessary to carry out the

purpose and intent of the Plan.

(h)     To determine such other matters as may be provided for in the order of the

Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the

Bankruptcy Code.

(i)     To hear and determine all controversies, suits and disputes, if any, as may

arise with regard to orders of this Court in the Bankruptcy Case;

(j)     To hear and determine any and all controversies and disputes arising

under, or in connection with, the Plan or the order confirming the Plan;

(k)     To adjudicate all controversies concerning the classification of any Claim;

(l)     To liquidate damages in connection with any disputed, contingent, or

unliquidated Claims;

(m)     To adjudicate all Claims to a security or ownership interest in any

Property of the Debtor or in any proceeds thereof;

(n)     To adjudicate all Claims or controversies arising out of any purchases,

sales, or contracts made or undertaken during the pendency of this Bankruptcy Case;

(o)     To recover all assets and Property of the Debtor wherever located,

including the prosecution and adjudication of all causes of action available to the Debtor as of

the Confirmation Date;

22

(p)      To determine all questions and disputes regarding recovery of, and

entitlement to the Assets and determine all claims and disputes between the Debtor and any other

Entity, whether or not subject to an action pending as of the Confirmation Date;

(q)      To enter any order, including injunctions, necessary to enforce the title,

rights, and powers of the Debtor and to impose such limitations, restrictions, terms and

conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(r)      To enter an order or final decree closing and terminating the Bankruptcy

Case; and

(s)      To make such orders as are necessary or appropriate to carry out the

provisions of this Plan, including but not limited to orders interpreting, clarifying, or enforcing

the provisions thereof and/or confirming the Plan.

## ARTICLE XIII.
## GENERAL PROVISIONS

13.1    Time Limit for Filing Objections to Claims.  All objections to Claims shall be

commenced, filed, or asserted within forty-five (45) days after the Effective Date.  This time

limit may be extended by the Bankruptcy Court after notice and a hearing.

13.2    Administrative Expense Claims Bar Date.  Unpaid Administrative Expense

Claims arising prior to the Effective Date (other than ordinary course Administrative Expense

Claims and fees of the United States Trustee) shall be filed with the Bankruptcy Court no later

than thirty (30) days after the Effective Date, except that taxing authorities shall have two

hundred ten (210) days after the Effective Date to file Administrative Expense Claims, or be

forever barred from receiving any distribution under the Plan.  Professionals shall file final fee

SLC_1360904.4

applications for Administrative Expense Claims arising prior to the Effective Date by this date to meet this requirement.

13.3    **Releases.  Except as otherwise provided in the Plan or Confirmation Order, as of the Effective Date, the Trustee; the Debtor; the Reorganized Debtor; Okelberry; any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, and agents, any such parties' successors and assigns, shall be released by the Debtor and any successors in interest of the Debtor from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of such date or thereafter arising, at law, in equity, or otherwise, that the Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert on behalf of the Debtor or its estate, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date but occurring during the Bankruptcy Case, except for acts constituting willful misconduct, gross negligence, or bad faith and, in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Excepted from this Release are obligations owed to the Debtor, the Debtor's Estate, the Reorganized Debtor, and/or the Trustee under settlement agreements in the Bankruptcy Case**.

13.4    **Exculpations.  Except as otherwise provided in the Plan or Confirmation Order, as of the date of the Closing, the Trustee; the Debtor; the Reorganized Debtor;**

24

**Okelberry; any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, and agents, any such parties' successors and assigns; and any property of or professionals retained by such parties, or direct or indirect predecessor in interest to any of the foregoing persons, shall not have or incur any liability to any Person or Entity for any act taken or omission, after the Petition Date, in connection with or related to the Bankruptcy Case or the operations of the Debtor's business during the Bankruptcy Case, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating, or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release, or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Bankruptcy Case, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

       **13.5**   <u>**Injunction**</u>.  **The satisfaction, releases, and discharge pursuant to Articles 9 and 11 of the Plan will also act as an injunction against any Person or Entity commencing or continuing any action, employment of process or act to collect, offset, recoup or recover any Claim satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.**

       13.6   <u>Modification of the Plan</u>.  The Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time before the

25

Effective Date.  After the Effective Date, the Trustee may, upon order of the Bankruptcy Court,

amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or

remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may

be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that

has accepted the Plan shall be deemed to have accepted the Plan as modified if the modification

does not materially and adversely change the treatment of the Claim of such holder.

      13.7   <u>Withdrawal or Revocation of the Plan</u>.  The Trustee may withdraw or revoke the

Plan at any time prior to the Effective Date, subject to the consent of Okelberry.  If the Trustee

revokes or withdraws the Plan prior to the Effective Date, or if the Effective Date does not occur,

then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan or

Disclosure Statement shall be deemed to constitute a waiver or release of any Claim by or

against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or

any other person in any further proceedings involving the Debtor.

      13.8   <u>Effectuating Documents and Further Transactions</u>.  Upon entry of the

Confirmation Order, the Trustee and the Reorganized Debtor shall be authorized and are

instructed to execute, deliver, file or record such contracts, instruments, releases, indentures, and

other agreements or documents and take such actions as may be reasonably necessary or

appropriate to effectuate and further evidence the terms and conditions of the Plan.

      13.9   <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the

Effective Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy

Court shall, with the consent of the Trustee, have the power to alter and interpret such term or

provision to make it valid or enforceable to the maximum extent practicable, consistent with the

SLC_1360904.4

original purpose of the term or provision held to be invalid, void, or unenforceable, and such

term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such

holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall

remain in full force and effect and shall in no way be affected, impaired, or invalidated by such

holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial

determination and shall provide that each term and provision of the Plan, as it may have been

altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its

terms.  Notwithstanding the foregoing, the provisions in the Plan relating to releases and

exculpations are not severable from the remainder of the Plan.

13.10   Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy Rules

are applicable, rights and obligations arising under the Plan shall be governed by, and construed

and enforced in accordance with, the federal laws of the United States and, to the extent there is

no applicable federal law, the domestic laws of the State of Utah, without giving effect to Utah's

principles of conflicts of law.

13.11   Binding Effect.    The rights and obligations of any entity named or referred to in

this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such

entity.

13.12   Captions.  The headings contained in this Plan are for convenience of reference

only and do not affect the meaning or interpretation of this Plan.

13.13   Payment of Statutory Fees.  All fees payable pursuant to 28 U.S.C. § 1930(a)(6)

of the United States Code, as determined by the Bankruptcy Court as of the Effective Date, shall

SLC_1360904.4

be paid on the Effective Date by the Trustee.  Any Statutory Fees accruing after the Effective

Date also shall be paid by the Reorganized Debtor.

13.14   <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be

in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c)

overnight receipted delivery to be addressed as follows:

if to the Trustee:

> Duane H. Gillman
> Durham Jones & Pinegar, P.C.
> 111 East Broadway, Suite 900
> P.O. Box 4050
> Salt Lake City, UT  84110-4050
> Facsimile:  (801) 415-3500
> Email: dgillman@djplaw.com

with a copy to:

> Kenneth L. Cannon II
> Patrick E. Johnson
> Durham Jones & Pinegar, P.C.
> 111 East Broadway, Suite 900
> P.O. Box 4050
> Salt Lake City, UT  84110-4050
> Facsimile:  (801) 415-3500
> Email: kcannon@djplaw.com
>      pjohnson@djplaw.com

13.15   <u>Retention of Causes of Action/Reservation of Rights</u>.  Except as provided in

Sections 13.3, 13.4, and 13.5 of this Plan, nothing contained in the Plan or the Confirmation

Order shall be deemed to be a waiver or relinquishment of any claim (as that term is defined in

section 101(5) of the Bankruptcy Code), rights, causes of action, right of setoff, or other legal or

equitable defense that the Trustee, the Debtor, or the Reorganized Debtor may have or choose to

assert on behalf of its estate under any provision of the Bankruptcy Code or any applicable

nonbankruptcy law, including, without limitation, (i) any and all claims against any person or

28

entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Trustee, the Debtor, or the Reorganized Debtor, and its officers, directors, or representatives, (ii) any and all claims under chapter 5 of the Bankruptcy Code, and (iii) the turnover of any property of the Debtor's Estate.  Following the Effective Date, the Trustee will retain exclusive rights to bring claims under chapter 5 of the Bankruptcy Code.

13.16   Section 506(c) Reservation.  Except as provided in any orders of the Bankruptcy Court, the Trustee reserves all rights under section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

13.17   Confirmation Request.  The Trustee hereby requests Confirmation of the Plan pursuant to section 1129(a) and/or section 1129(b) of the Bankruptcy Code (in the event the Plan is not approved by each of those Classes of Claims and Interests entitled to vote).

DATED this 30th day of May, 2013.

DUANE H. GILLMAN, CHAPTER 11 TRUSTEE


_____/s/ Duane H. Gillman_____

29

DURHAM JONES & PINEGAR, P.C.


By: ____/s/ Kenneth L. Cannon II_____
  Kenneth L. Cannon II (3705)
  Patrick E. Johnson (10771)
  111 East Broadway, Suite 900
  P O Box 4050
  Salt Lake City, Utah 84110-4050
  Telephone: (801) 415-3000
  Facsimile: (801) 415-3500

Attorneys for Duane H. Gillman, Chapter 11 Trustee

30